# Syllabus

Chief Justice:
Stephen J. Markman

Justices:
Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Richard H. Bernstein
Kurtis T. Wilder
Elizabeth T. Clement

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Kathryn L. Loomis

SOUTH DEARBORN ENVIRONMENTAL IMPROVEMENT ASSOCIATION, INC v
DEPARTMENT OF ENVIRONMENTAL QUALITY

Docket Nos. 154524 and 154526. Argued on application for leave to appeal March 6, 2018. Decided July 17, 2018.

South Dearborn Environmental Improvement Association, Inc. (South Dearborn) and several other environmental groups petitioned the Wayne Circuit Court for judicial review of a decision of the Department of Environmental Quality (DEQ) to issue a permit to install (PTI) for an existing source under the Natural Resources and Environmental Protection Act (NREPA), MCL 324.101 *et seq.* In 2006, the DEQ issued Severstal Dearborn, LLC (Severstal) a PTI that authorized the rebuilding of a blast furnace and the installation of three air pollution control devices at Severstal's steel mill. In the years that followed, the permit was revised twice; each successive permit modified and replaced the preceding permit. Emissions testing performed in 2008 and 2009 revealed that several emission sources at the steel mill exceeded the level permitted. The DEQ sent Severstal a notice of violation, and after extended negotiations, they entered into an agreement, pursuant to which Severstal submitted an application for PTI 182-05C, the PTI at issue in this case. The DEQ issued the permit on May 12, 2014, stating that the purpose of PTI 182-05C was to correct inaccurate assumptions about preexisting and projected emissions and to reallocate emissions among certain pollution sources covered by the PTI. On July 10, 2014, 59 days after PTI 182-05C was issued, South Dearborn and several other environmental groups appealed the DEQ's decision in the circuit court. AK Steel Corporation (AK Steel) purchased the steel mill a short time later and moved to dismiss the action, arguing that the circuit court lacked jurisdiction over the appeal because South Dearborn's petition was untimely filed. According to AK Steel, South Dearborn's right to appeal a PTI for an existing source was based in MCL 600.631 of the Revised Judicature Act, MCL 600.101 *et seq.*, and therefore the period in which to file an appeal was governed by MCR 7.123(B)(1) and MCR 7.104(A), which require that an appeal be filed within 21 days after the issuance of the permit. The court, Daniel A. Hathaway, J., denied AK Steel's motion to dismiss, holding that South Dearborn's petition for judicial review was timely filed because MCL 324.5506(14) governed the PTI appealed in this case and, therefore, South Dearborn had 90 days to file the petition. AK Steel appealed in the Court of Appeals, and the Court of Appeals, RIORDAN P.J., and SAAD and M. J. KELLY, JJ., affirmed the result but on different grounds, holding that the appeals period outlined in MCL 324.5506(14) applies only to operating permits and that MCL 600.631 and MCR 7.119 governed this appeal because, in its view, the contested-case provisions of the Administrative Procedures Act (APA), MCL 24.201 *et seq.*, applied to the permitting decision

pursuant to MCL 24.291(1). Accordingly, the Court of Appeals held that the petition was timely because it was filed within the 60-day period provided by MCR 7.119 and MCR 7.104(A). 316 Mich App 265 (2016). AK Steel sought leave to appeal in the Supreme Court, and the DEQ filed a separate application raising nearly identical arguments. The Supreme Court consolidated the applications and scheduled oral argument on whether to grant the applications or take other action. 500 Mich 966 (2017).

In an opinion by Justice BERNSTEIN, joined by Justices MCCORMACK, VIVIANO, and CLEMENT, the Supreme Court, in lieu of granting leave to appeal, *held*:

The final sentence of MCL 324.5505(8) recognizes the right to judicial review of the issuance or denial of a permit to install for an existing source in accordance with MCL 600.631 and provides that an appeal of such a permit action is governed by MCL 324.5506(14). MCL 324.5506(14) provides 90 days to seek judicial review of a decision to issue or deny a permit to install for an existing source. A petition for judicial review of the issuance or denial of any of the types of permits for an existing source that are governed by MCL 324.5505 and MCL 324.5506 must be filed within 90 days of the DEQ's final permit action. Accordingly, the trial court correctly denied AK Steel's motion to dismiss because the petition for judicial review was timely filed. Given that decision, Part III(B) of the Court of Appeals opinion was vacated as moot.

1. The final sentence of MCL 324.5505(8) provides that appeals of permit actions for existing sources are subject to MCL 324.5506(14). The plain language of this sentence indicates that a court must turn to MCL 324.5506(14) for the rules governing appeals of permit actions for an existing source, including appeals in the circuit court in accordance with MCL 600.631. The last sentence of MCL 324.5505(8) does not merely notify the reader of the contents of MCL 324.5506(14); reading the last sentence as a mere descriptor of the contents of MCL 324.5506(14) would strip it of any independent meaning or legal purpose. Rather, by saying that appeals of permit actions for existing sources are "subject to" MCL 324.5506(14), the last sentence of MCL 324.5505(8) instructs the reader that a right to appeal certain permit actions for an existing source, including a right to appeal in the circuit court in accordance with MCL 600.631, exists and is subject to MCL 324.5506(14). By using the phrase "subject to" in MCL 324.5505(8), the Legislature indicated its intent that MCL 324.5505(8) and MCL 324.5506(14) be read together, not in isolation. Reading MCL 324.5505(8) as working with MCL 324.5506(14) gives the full text of both statutes independent meaning and avoids reducing the final sentence of MCL 324.5505(8) to a mere descriptor of the next section. Additionally, the general reference to "permit actions" in the final sentence of MCL 324.5505(8), rather than a reference to a specific type of permit, indicates that appeals of all three permit types listed in the first sentence of MCL 324.5505(8) are contemplated. Accordingly, appeals of permit actions that are subject to MCL 324.5506(14) include, at a minimum, appeals of the issuance or denial of a permit to install, a general permit, or a permit to operate for an existing source.

2. The fourth sentence of MCL 324.5506(14) provides that a petition for judicial review is the exclusive means of obtaining judicial review of a permit and shall be filed within 90 days after the final permit action. The term "a permit" does not only refer to the operating permits described in the immediately preceding sentence of MCL 324.5506(14), which provides, in pertinent part, that any person may appeal the issuance or denial of an operating permit in

accordance with MCL 600.631. Rather, MCL 324.5506(14) must be read together with MCL 324.5505(8), and the cross-reference in MCL 324.5505(8) to MCL 324.5506(14) demonstrates that appeals of the issuance or denial of a permit are subject to MCL 324.5506(14) when the permit is for an existing source. Furthermore, the presence of the indefinite article "a" preceding the word "permit" in MCL 324.5506(14) suggests that the statute refers to more than one type of permit. Had the Legislature intended the fourth sentence of MCL 324.5506(14) to refer only to operating permits, then it would have used that specific term, or another restrictive term, rather than the general phrase "a permit." Four permit types are mentioned by name in MCL 324.5505(8) and MCL 324.5506(14), which indicates that the Legislature knew how to be specific when it so intended. Moreover, when the Legislature wanted to use "permit" to refer to a particular previously referenced permit, it used more restrictive language; for instance, the first sentence of MCL 324.5506(14) lists three types of permits that an owner or operator of an emission source might possess and instructs how "such a permit" and "his or her permit" may be reviewed when referring back to those specific permits. Because the fourth sentence of MCL 324.5506(14) refers to "a permit," this nonrestrictive language refers to any of the four types of permits mentioned in MCL 324.5505(8) and MCL 324.5506(14). Accordingly, a petition for judicial review of the issuance or denial of any of the four types of permits for an existing source that are governed by MCL 324.5505 and MCL 324.5506—one of which is a permit to install— must be filed within 90 days of the DEQ's final permit action. In this case, South Dearborn's petition for judicial review was timely filed within the 90-day window because South Dearborn filed the petition 59 days after the permit was issued.

3. The conclusion that the fourth sentence of MCL 324.5506(14) applies to any of the four permits for existing sources that are governed by MCL 324.5505 and MCL 324.5506 does not render other avenues for appeal superfluous. First, no internal conflict was created within MCL 324.5506(14). The first sentence of MCL 324.5506(14) addresses a discrete group of persons who might challenge a permit action—a person who owns or operates an existing source—and also provides them a right to contest various types of permit actions, not merely the issuance or denial of a permit. The second sentence of MCL 324.5506(14) states that owners or operators may file a petition for administrative review of the previously listed permit actions pursuant to the contested-case and judicial-review procedures of the Administrative Procedures Act. Therefore, the first two sentences of MCL 324.5506(14) exclusively concern the rights of owners and operators of an existing source to seek administrative review of specific permit actions, which is a legally distinct avenue of potential relief from judicial review. The third sentence of MCL 324.5506(14) states that any person may appeal the issuance or denial of an operating permit in accordance with MCL 600.631, which means that non-owners and non-operators also have a right to judicial review of the issuance or denial of operating permits, even if they possess no right to administrative review. Accordingly, the first three sentences of MCL 324.5506(14) each have an independent legal purpose that is unaffected by the conclusion that the fourth sentence of MCL 324.5506(14) applies to any of the four permits for existing sources that are governed by MCL 324.5505 and MCL 324.5506. Second, there was no conflict with the right to appeal the issuance or denial of a permit to install for a new source pursuant to MCL 324.5505(8). The first two sentences of MCL 324.5505(8) govern only the appeal of permit actions for specific permits—and only when the permit is for a new source. The fourth sentence of MCL 324.5506(14) applies to judicial review of permits for an existing source, including issuance or denial of an operating permit, which is not addressed in MCL 324.5505(8). Finally, the Court of Appeals misconstrued the surplusage canon. The surplusage canon applies only

when a competing interpretation gives effect to every clause and word of a statute. There was no such competing interpretation offered in this case.

Affirmed in part for different reasons; Part III(B) of the Court of Appeals opinion vacated; case remanded to the circuit court.

Justice WILDER, joined by Chief Justice MARKMAN and Justice ZAHRA, dissenting, would have affirmed the portion of the Court of Appeals opinion that held that MCL 324.5506(14) describes only two different appeals and that the term "a permit" does not refer to a third class of appellant who may appeal any type of permit. Reading MCL 324.5506(14) as a whole, sentence four's placement immediately after the sentence recognizing judicial review of an operating permit provided a highly relevant context for interpreting the statute, and therefore the more reasonable interpretation of sentence four was that "a permit" refers to the term "operating permit" used in the immediately preceding sentence, rather than to a PTI, a type of permit that is not mentioned anywhere in MCL 324.5506. The majority's interpretation renders nugatory both MCL 324.5505(8) and MCL 324.5506(14); the Legislature differentiated between new and existing sources and the identity of the challenger, and permitting any party to seek judicial review of any permit under sentence four of MCL 324.5506(14) renders these distinctions meaningless. Justice WILDER also would have reversed the holding in Part III(B) of the Court of Appeals opinion that MCR 7.119 governs, because the APA does not apply under these facts. MCL 24.291(1) states, in pertinent part, that when licensing is required to be preceded by notice and an opportunity for hearing, the provisions of the APA governing a contested case apply, and MCL 24.203(3) defines "contested case," in pertinent part, as a proceeding, including licensing, in which a determination of the legal rights, duties, or privileges of a named party is required by law to be made by an agency after an opportunity for an evidentiary hearing. Therefore, the correct interpretation of these provisions requires an evidentiary hearing before a contested case in order for the APA to apply. Because that did not happen in this case, Justice WILDER would have held that the APA did not apply. Finally, Justice WILDER would have concluded that because the APA was not applicable, the provisions of the Revised Judicature Act, MCL 600.101 *et seq.*, for judicial review applied. Therefore, MCR 7.123, the catch-all rule for appeals of agency decisions not governed by another rule, applied in this case, and MCR 7.123 provided 21 days for petitioners to challenge the DEQ's decision to issue the PTI. Because petitioners' challenge came 59 days after that decision, Justice WILDER would have held that the challenge was not timely.

©2018 State of Michigan

# OPINION

Chief Justice:
Stephen J. Markman

Justices:
Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Richard H. Bernstein
Kurtis T. Wilder
Elizabeth T. Clement

FILED July 17, 2018

STATE OF MICHIGAN

SUPREME COURT

SOUTH DEARBORN ENVIRONMENTAL
IMPROVEMENT ASSOCIATION, INC.,
DETROITERS WORKING FOR
ENVIRONMENTAL JUSTICE, ORIGINAL
UNITED CITIZENS OF SOUTHWEST
DETROIT, and SIERRA CLUB,

Petitioners-Appellees,

v                                                            No.  154524

DEPARTMENT OF ENVIRONMENTAL
QUALITY and DAN WYANT,

Respondents-Appellants,

and

AK STEEL CORPORATION,

Appellee.

SOUTH DEARBORN ENVIRONMENTAL
IMPROVEMENT ASSOCIATION, INC.,
DETROITERS WORKING FOR
ENVIRONMENTAL JUSTICE, ORIGINAL
UNITED CITIZENS OF SOUTHWEST
DETROIT, and SIERRA CLUB,

   Petitioners-Appellees,

v             No. 154526

DEPARTMENT OF ENVIRONMENTAL
QUALITY and DAN WYANT,

   Respondents-Appellees,

and

AK STEEL CORPORATION,

   Appellant.

_____

BEFORE THE ENTIRE BENCH

BERNSTEIN, J.

In this case, we consider how long an interested party has to file a petition for judicial review of a Michigan Department of Environmental Quality (DEQ) decision to issue a permit for an existing source of air pollution. We hold that MCL 324.5505(8) and MCL 324.5506(14) provide that such a petition must be filed within 90 days of the DEQ's final permit action. Therefore, the circuit court correctly denied AK Steel Corporation's (AK Steel's) motion to dismiss pursuant to MCR 2.116(C)(1) because the petition for judicial review was timely filed 59 days after the final permit action in this

case. Accordingly, we affirm the judgment of the Court of Appeals in part, albeit for different reasons, and remand this case to the circuit court for further proceedings.[1]

## I. FACTS AND PROCEDURAL HISTORY

AK Steel operates a steel mill within the Ford Rouge Manufacturing complex in Dearborn, Michigan. Before being acquired by AK Steel in 2014, the steel mill was operated by Severstal Dearborn, LLC (Severstal). The steel mill is subject to air pollution control and permitting requirements under the federal Clean Air Act,[2] 42 USC 7401 *et seq.*, and the Natural Resources and Environmental Protection Act (NREPA), MCL 324.101 *et seq.* In order to comply with the Clean Air Act, Part 55 of the NREPA requires the DEQ to promulgate rules to establish a permit-to-install program, MCL 324.5505(2), and an operating-permit program, MCL 324.5506(4).

In 2006, the DEQ issued Severstal a permit to install[3] titled "PTI 182-05," which authorized the rebuilding of a blast furnace and the installation of three air pollution

---

[1] Our conclusion that MCL 324.5505(8) and MCL 324.5506(14) provide 90 days to file a petition in this case makes it unnecessary to consider the applicability of the contested-case provision of the Administrative Procedures Act, MCL 24.201 *et seq.*, an issue considered by the Court of Appeals. Therefore, we vacate Part III(B) of the Court of Appeals' analysis of that issue as moot.

[2] The Clean Air Act requires states to regulate air pollution emissions within their borders and abide by certain regulatory requirements in doing so. 42 USC 7407. Relevant to this appeal, states must create programs requiring that certain producers of air pollution obtain permits authorizing their conduct. 42 USC 7661a.

[3] The NREPA states that "a person shall not install, construct, reconstruct, relocate, alter, or modify any process or process equipment without first obtaining from the [DEQ] a permit to install . . . authorizing the conduct or activity." MCL 324.5505(1). The DEQ defines a "permit to install" as "a permit issued by the department authorizing the construction, installation, relocation, or alteration of any process, fuel-burning, refuse-

3

control devices at Severstal's steel mill. In the years that followed, the permit was revised twice, first in 2006 (PTI 182-05A) and again in 2007 (PTI 182-05B). Each successive permit modified and replaced the preceding permit.

Emissions testing performed in 2008 and 2009 revealed that several emission sources at the steel mill exceeded the level permitted by PTI 182-05B. The DEQ sent Severstal a notice of violation, and after extended negotiations, they entered into an agreement, pursuant to which Severstal submitted an application for PTI 182-05C. The DEQ issued the permit on May 12, 2014, after a period of public comment and a public hearing as prescribed by the NREPA, MCL 324.5511(3). The DEQ stated that the purpose of PTI 182-05C was to correct inaccurate assumptions about pre-existing and projected emissions and to reallocate emissions among certain pollution sources covered by the permit to install.

On July 10, 2014, 59 days after PTI 182-05C was issued, appellee South Dearborn Environmental Improvement Association, Inc. (South Dearborn)[4] and a number of other environmental groups appealed the DEQ's decision by filing a petition for judicial review in the Wayne Circuit Court.[5]

---

burning, or control equipment in accordance with approved plans and specifications." Mich Admin Code, R 336.1116(f).

[4] South Dearborn is the only named appellee that has participated in the appeal in this Court, and therefore, this opinion only addresses appellees' arguments as presented by South Dearborn.

[5] We note that South Dearborn substantively challenged the issuance of the permit to install on the grounds that the DEQ does not have statutory authority to reallocate emission limitations and levels among various sources by issuing a revised permit to

4

AK Steel purchased the steel mill a short time later and filed a motion to dismiss pursuant to MCR 2.116(C)(1), arguing that South Dearborn's petition was untimely filed and thus the circuit court lacked jurisdiction over the case.[6]  According to AK Steel, while MCL 324.5505(8)[7] and MCL 324.5506(14)[8] provide a right to appeal the issuance or denial of an operating permit[9] and a permit to install for a *new* source, and state when

---

install.  We need not reach the merits of this argument because the sole matter before this Court is whether the petition for judicial review was timely filed.

[6] We note that AK Steel's motion was filed pursuant to the wrong court rule.  Subchapter 7.100 of the court rules governs circuit court appeals from an agency's decisions.  MCR 7.110 states that "[m]otion practice in a circuit court appeal is governed by MCR 2.119" and may include "special motions identified in MCR 7.211(C)."  Neither Subchapter 7.100 nor MCR 2.119 provides a party with the authority to file a motion pursuant to MCR 2.116 in a circuit court appeal.  Rather, because MCR 7.104(A) states that "[t]he time limit for an appeal of right is jurisdictional," AK Steel's motion to dismiss should have instead been filed pursuant to MCR 7.211(C)(2)(a), which states: "An appellee may file a motion to dismiss an appeal . . . on the ground that the appeal is not within the [circuit court's appellate] jurisdiction[.]"

[7] "Any person may appeal the issuance or denial by the department of a permit to install . . . for a new source in accordance with . . . [MCL 600.631].  Petitions for review shall be the exclusive means to obtain judicial review of such a permit and shall be filed within 90 days after the final permit action . . . .  Appeals of permit actions for existing sources are subject to section 5506(14)."  MCL 324.5505(8).

[8] "A person who owns or operates an existing source that is required to obtain an operating permit under this section . . . may file a petition with the department for review of [specifically listed permit actions].  This review shall be conducted pursuant to the contested case and judicial review procedures of . . . [MCL] 24.201 to [MCL] 24.328 . . . .  Any person may appeal the issuance or denial of an operating permit in accordance with . . . [MCL 600.631].  A petition for judicial review is the exclusive means of obtaining judicial review of a permit and shall be filed within 90 days after the final permit action."  MCL 324.5506(14).

[9] While an operating permit is not expressly defined, it generally allows the DEQ to engage in ongoing monitoring of emissions from a source of air pollution.  If an operating

5

such appeals must be filed, neither statute applies to a permit to install for an *existing* source.[10] Instead, AK Steel argued that South Dearborn's right to appeal a permit to install for an existing source is based in MCL 600.631 of the Revised Judicature Act, MCL 600.101 *et seq.*, and that the period in which to file an appeal is thus governed by MCR 7.123(B)(1) and MCR 7.104(A). AK Steel claimed that South Dearborn's appeal was untimely because it was not filed within 21 days, as required by those court rules.

The circuit court disagreed. The court noted that MCL 324.5506(14) states, "A petition for judicial review is the exclusive means of obtaining judicial review of a permit and shall be filed within 90 days after the final permit action." Relying heavily on the Legislature's use of an indefinite article, the circuit court found that the phrase "a permit" in MCL 324.5506(14) included the permit to install appealed in this case. Therefore, South Dearborn had 90 days from the date that the fourth successive permit was issued to file a petition for judicial review. Accordingly, the circuit court held that South Dearborn's petition was timely filed and denied AK Steel's motion to dismiss.

AK Steel appealed in the Court of Appeals, which affirmed the result, but on different grounds. In the Court of Appeals' view, "[t]he circuit court erred by ignoring the plain context of [MCL 324.5506(14)] and placing far too much importance on the

---

permit is required for a source of emissions by the Clean Air Act, then a person may not operate that source without applying for and complying with an operating permit issued by the DEQ. See MCL 324.5506(1).

[10] The parties do not dispute that the contested permit was issued for an existing source as the term is used in the NREPA. Therefore, it is unnecessary to address any distinctions between a new and existing source.

6

Legislature's use of the indefinite article 'a.'" *South Dearborn Environmental Improvement Ass'n, Inc v Dep't of Environmental Quality*, 316 Mich App 265, 273; 891 NW2d 233 (2016) (*SDEIA*). Rejecting the circuit court's reasoning, the Court of Appeals held that the appeals period outlined in MCL 324.5506(14) applies only to operating permits. *Id*. at 274. The Court of Appeals determined that MCL 600.631 and MCR 7.119 governed this appeal because, in its view, the contested-case provisions of the Administrative Procedures Act, MCL 24.201 *et seq*., applied to the permitting decision pursuant to MCL 24.291(1). *Id*. at 277. On this basis, the Court of Appeals held that the petition was timely because it was filed within the 60-day period provided by MCR 7.119 and MCR 7.104(A). *Id*. at 277-278.

AK Steel sought leave to appeal in this Court. The DEQ, participating for the first time in these legal proceedings, filed a separate application raising nearly identical arguments. This Court consolidated their applications for the purpose of appellate review and scheduled oral argument on the applications. *South Dearborn Environmental Improvement Ass'n, Inc v Dep't of Environmental Quality*, 500 Mich 966 (2017). Our order instructed the parties to address, in substantive part:

> (1) whether MCL 324.5505(8) and MCL 324.5506(14) prescribe the applicable time period for filing a petition for judicial review of the Department of Environmental Quality's issuance of the permit that the petitioners are seeking to challenge, and (2) if not, whether the issuance of that permit was a decision of that agency subject to the contested case provisions of the Administrative Procedures Act, such that the time period for filing a petition for judicial review set forth in MCR 7.119(B)(1) applies, rather than the time period established by MCR 7.123(B)(1) and MCR 7.104(A). [*Id*.]

7

## II. STANDARD OF REVIEW

This Court reviews de novo the grant or denial of a motion to dismiss an appeal for a lack of jurisdiction.[11] Whether the circuit court has jurisdiction over this appeal is a question of statutory interpretation that we also review de novo. *People v Mazur*, 497 Mich 302, 308; 872 NW2d 201 (2015).

The principal goal of statutory interpretation is to give effect to the Legislature's intent, and the most reliable evidence of that intent is the plain language of the statute. *Id*. When interpreting a statute, " 'we must give effect to every word, phrase, and clause and avoid an interpretation that would render any part of the statute surplusage or nugatory.' " *People v Rea*, 500 Mich 422, 428; 902 NW2d 362 (2017), quoting *People v Miller*, 498 Mich 13, 25; 869 NW2d 204 (2015). Moreover, "[n]ontechnical words and phrases" should be construed according to their plain meaning, taking into account the context in which the words are used. *Rea*, 500 Mich at 428. "When a word or phrase is not defined by the statute in question, it is appropriate to consult dictionary definitions to determine [its] plain and ordinary meaning . . . ." *Id*.

---

[11] We review a trial court's decision to grant or deny a motion for summary disposition de novo. See *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). We also review questions of law de novo. As we noted earlier, AK Steel should have filed its motion pursuant to MCR 7.211(C)(2)(a). Such a motion is a motion to dismiss an *appeal*, rather than a motion for summary disposition. However, "[m]otions to dismiss or affirm or for peremptory reversal essentially are the appellate versions of a motion for summary disposition. Motions to dismiss basically present jurisdictional arguments why the court should not consider the appeal." 6 Longhofer, Michigan Court Rules Practice, Text (6th ed), § 7110.1, p 37. It follows that a motion to dismiss an appeal based on a jurisdictional argument, which presents a purely legal issue, is analogous to a motion for summary disposition and should also be reviewed de novo.

## III. INTERPRETATION AND APPLICATION OF MCL 324.5505(8) AND MCL 324.5506(14)

The focus of this appeal is on the interplay of MCL 324.5505(8) and MCL 324.5506(14). These subsections govern appeals of various DEQ permitting decisions made pursuant to Part 55 of the NREPA. The critical dispute in this case is whether the fourth sentence of MCL 324.5506(14)—"A petition for judicial review is the exclusive means of obtaining judicial review of a permit and shall be filed within 90 days after the final permit action"—applies to the issuance of a permit to install for an existing source. The Court of Appeals held that this sentence applies only to operating permits. *SDEIA*, 316 Mich App at 272-273. We disagree and conclude that the Court of Appeals failed to read MCL 324.5505(8) and MCL 324.5506(14) together so as to "harmonize the[ir] meaning, giving effect to the act as a whole." *G C Timmis & Co v Guardian Alarm Co*, 468 Mich 416, 421; 662 NW2d 710 (2003) (quotation marks and citation omitted).

### A. MCL 324.5505(8)

We begin our analysis with MCL 324.5505(8), which states:

> Any person may appeal the issuance or denial by the [DEQ] of a permit to install, a general permit, or a permit to operate authorized in rules promulgated under [MCL 324.5505(6)], for a *new source* in accordance with . . . MCL 600.631. . . . Petitions for review shall be the exclusive means to obtain judicial review of such a permit and shall be filed within 90 days after the final permit action, except that a petition may be filed after that deadline only if the petition is based solely on grounds arising after the deadline for judicial review. Such a petition shall be filed no later than 90 days after the new grounds for review arise. *Appeals of permit actions for existing sources are subject to section 5506(14)*. [Emphasis added.]

The first two sentences of MCL 324.5505(8) provide that "any person" may seek judicial review in accordance with MCL 600.631[12] to challenge the issuance or denial of certain permits relating to *new* sources "within 90 days after the final permit action . . . ." However, the permit at issue in this case was issued for an *existing* source, which is addressed in the last sentence of MCL 324.5505(8)—"Appeals of permit actions for *existing* sources are subject to section 5506(14)." (Emphasis added.) The plain language of this sentence indicates that we turn to MCL 324.5506(14) for the rules governing appeals of permit actions for an existing source, including appeals in the circuit court in accordance with MCL 600.631.

AK Steel and the DEQ argue that the last sentence of MCL 324.5505(8) does not provide a right to judicial review of permit actions for an existing source pursuant to MCL 600.631; rather, it merely notifies the reader of the contents of MCL 324.5506(14). We reject that interpretation. Reading the last sentence as a mere descriptor of the contents of MCL 324.5506(14) would strip it of any independent meaning or legal purpose. Such a reading is contrary to the interpretive principle that a statute should be

---

[12] MCL 600.631 provides:

> An appeal shall lie from any order, decision, or opinion of any state board, commission, or agency, authorized under the laws of this state to promulgate rules from which an appeal or other judicial review has not otherwise been provided for by law, to the circuit court of the county of which the appellant is a resident or to the circuit court of Ingham county, which court shall have and exercise jurisdiction with respect thereto as in nonjury cases. Such appeals shall be made in accordance with the rules of the supreme court.

10

construed so as to avoid rendering its language surplusage. *Rea*, 500 Mich at 428. Rather, by saying that appeals of permit actions for existing sources are "subject to" MCL 324.5506(14), the last sentence of MCL 324.5505(8) instructs the reader that a right to appeal certain permit actions for an existing source, including a right to appeal in the circuit court in accordance with MCL 600.631, exists and is subject to MCL 324.5506(14). Stated differently, such appeals are governed by MCL 324.5506(14).

This reading is consistent with our interpretation of similar statutory language in *Mayor of Lansing v Pub Serv Comm*, 470 Mich 154; 680 NW2d 840 (2004). That case involved a utility company that wanted to build a pipeline. Two statutory provisions, MCL 247.183(1) and MCL 247.183(2), outlined the approval process for a pipeline.[13] The utility company argued that because the plain language of MCL 247.183(1) stated that it was "subject to" MCL 247.183(2), the company had to comply only with MCL 247.183(2) and not MCL 247.183(1) as well. We rejected that argument. *Id*. at 159-160. In doing so, we examined the phrase "subject to" and noted that it is defined as "dependent upon." *Id*. at 160, citing *Random House Webster's College Dictionary* (2001). From there, we reasoned:

> When used as it is here and in other places in the Legislature's work, it is clear that the subsections work together . . . . That is, both subsections are applicable because the relevant words in subsection 1, the "subject to" words, do not mean that the requirements of subsection 1 do not apply to those utilities that are covered also by subsection 2. [*Mayor of Lansing*, 470 Mich at 160.]

---

[13] The Legislature subsequently amended MCL 247.183 by enacting 2005 PA 103.

We further note that *Merriam-Webster's Collegiate Dictionary* (11th ed) provides that to be "subject" to something includes, among other things, being "contingent on or under the influence of some later action <the plan is [subject] to discussion>." This signals that when an item or event is subject to another item or event, the former and the latter must be considered together. Therefore, by using the phrase "subject to" in MCL 324.5505(8), the Legislature indicated its intent that MCL 324.5505(8) and MCL 324.5506(14) be read together, not in isolation. This reading also makes sense in light of the same language used elsewhere in Part 55 of the NREPA to indicate that the application of one provision is affected by another.[14] Reading MCL 324.5505(8) as working with MCL 324.5506(14) gives the full text of both statutes independent meaning and avoids reducing the final sentence of MCL 324.5505(8) to a mere descriptor of the next section.

AK Steel also urges us to disregard the final sentence of MCL 324.5505(8) because it does not explicitly refer to a *permit to install*. However, when we consider the effect of the words "permit actions" in that sentence, it is clear that identifying a specific permit type in the statutory language was unnecessary. The first sentence of MCL 324.5505(8) states, "Any person may appeal *the issuance or denial . . . of a permit to*

---

[14] See, e.g., MCL 324.5512(1) ("*Subject to section 5514*, the department shall promulgate rules for purposes of doing all of the following . . . .") (emphasis added). According to MCL 324.5514, the DEQ is prohibited from promulgating rules limiting emissions from wood heaters or enforcing federal regulations imposing such limitations. Thus, when the DEQ promulgates rules pursuant to MCL 324.5512(1), it must look to MCL 324.5514 for further restrictions on the potential subject matter of those rules.

12

*install*, a general permit, or a permit to operate . . . for a new source in accordance with . . . MCL 600.631." (Emphasis added.) An issuance and a denial are two types of actions that the DEQ can take in response to a permit application. The last sentence of MCL 324.5505(8) then states, "Appeals of *permit actions* for existing sources are subject to section 5506(14)." (Emphasis added.) Read in context, "permit actions" refers, at minimum, back to the two types of departmental actions mentioned in the first sentence: an issuance or a denial. It is also clear that a permit action requires a permit to act upon. In addition to a permit to install, two other types of permits are listed in the first sentence of the statute, both of which could be issued for an existing source. The general reference to "permit actions" in the final sentence of MCL 324.5505(8), rather than a reference to a specific type of permit, indicates that appeals of all three permit types are contemplated. Thus, appeals of permit actions that are subject to MCL 324.5506(14) include, at a minimum, appeals of the issuance or denial of a permit to install, a general permit, or a permit to operate for an existing source.[15]

In summary, the first part of MCL 324.5505(8) recognizes the right to judicial review of the issuance or denial of a permit to install for a *new source* in accordance with MCL 600.631 and provides "90 days after the final permit action" to file such an appeal. The final sentence of MCL 324.5505(8) recognizes the right to judicial review of the

---

[15] We note that it might be argued that permit actions could be read to include actions other than the issuance or denial of a permit, such as modification or revocation. As this appeal arises from the DEQ's decision to *issue* a permit to install, we need not decide whether other possible types of permit actions are also included.

issuance or denial of a permit to install for an *existing source* in accordance with MCL 600.631 and provides that an appeal of such a permit action is governed by MCL 324.5506(14). Since this case deals with an existing source, the next step in our analysis is to examine the language of MCL 324.5506(14) to determine the time period for filing appeals related to existing sources.

## B. MCL 324.5506(14)

MCL 324.5506(14) provides:

> A person who owns or operates an existing source that is required to obtain an operating permit under this section, a general permit, or a permit to operate authorized under rules promulgated under section 5505(6) may file a petition with the [DEQ] for review of the denial of his or her application for such a permit, the revision of any emissions limitation, standard, or condition, or a proposed revocation of his or her permit. This review shall be conducted pursuant to the contested case and judicial review procedures of the administrative procedures act . . . , being [MCL 24.201 to MCL 24.328]. Any person may appeal the issuance or denial of an operating permit in accordance with [MCL 600.631]. *A petition for judicial review is the exclusive means of obtaining judicial review of a permit and shall be filed within 90 days after the final permit action.* Such a petition may be filed after that deadline only if it is based solely on grounds arising after the deadline for judicial review and if the appeal does not involve applicable standards and requirements of the acid rain program under title IV. Such a petition shall be filed within 90 days after the new grounds for review arise. [Emphasis added.]

The Court of Appeals held that the 90-day period in which to file a petition for judicial review of "a permit" in MCL 324.5506(14) applies only to appeals of operating permits. *SDEIA*, 316 Mich App at 274. We disagree and hold that MCL 324.5506(14) also provides 90 days to seek judicial review of a decision to issue or deny a permit to install for an existing source.

14

The fourth sentence of MCL 324.5506(14) has been the focus of the disagreement in this case. It states that "[a] petition for judicial review is the exclusive means of obtaining judicial review of *a permit* and shall be filed within 90 days after the final permit action." MCL 324.5506(14) (emphasis added). Appellants and the dissent argue that "a permit" should be read as referring to only the operating permits described in the previous sentence—"[a]ny person may appeal the issuance or denial of an operating permit in accordance with [MCL 600.631]." If we read MCL 324.5506(14) alone and without consideration of MCL 324.5505(8), we might be inclined to agree.[16] However, we do not read statutory language in isolation and must construe its meaning in light of the context of its use. See *Rea*, 500 Mich at 430; *Guardian Alarm Co*, 468 Mich at 421. As explained earlier, the cross-reference in MCL 324.5505(8) to MCL 324.5506(14) demonstrates that appeals of the issuance or denial of a permit are subject to MCL 324.5506(14) when the permit is for an existing source. With this in mind, we conclude that a petition for judicial review of the issuance or denial of *any* of the types of permits

_____

[16] We agree with the dissent that the placement of the fourth sentence in MCL 324.5506(14) within that provision is a relevant consideration; however, it is not dispositive. As our opinion explains, when MCL 324.5505(8) and MCL 324.5506(14) are read together, the plain language of the statutes demonstrates that "a permit" should not be read as referring to only "an operating permit" as described in the preceding sentence. Our interpretation is consistent with the whole-text canon, "which calls on the judicial interpreter to consider the entire text, in view of its structure and of the physical and logical relation of its many parts." Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* (St. Paul: Thomson/West, 2012), p 167. Reviewing the entire text requires consideration of the relationship of text within a single statutory provision as well as its relationship to the text of other provisions within the same act. See *G C Timmis & Co v Guardian Alarm Co*, 468 Mich 416, 421; 662 NW2d 710 (2003).

15

for an *existing source* that are governed by MCL 324.5505 and MCL 324.5506 must be filed within 90 days of the DEQ's final permit action.

Several considerations lead us to this conclusion. The first is the presence of an indefinite article preceding the word "permit" in MCL 324.5506(14), which the Court of Appeals did not give due consideration. Rather than stating that a petition for review of *the* permit must be filed within 90 days, the statute states that a petition for review of "*a* permit" must be filed within 90 days. MCL 324.5506(14) (emphasis added). This suggests that the statute refers to more than one type of permit. "A" is an indefinite article, which is often used to mean "any."[17] *Merriam-Webster's Collegiate Dictionary* (11th ed). Whether "a" should be read as referring to a discrete item or as referring to one of many potential items depends on the context in which it is used.[18] But, while the article may be susceptible to multiple meanings when read in isolation, we must select the meaning that makes the most sense when the statute is read as a whole. See *Rea*, 500 Mich at 431; *Miller*, 498 Mich at 24.[19]

---

[17] "Any" means "one, some, or all indiscriminately of whatever quantity[.]" *Merriam-Webster's Collegiate Dictionary* (11th ed).

[18] See *Allstate Ins Co v Freeman*, 432 Mich 656, 743-744; 443 NW2d 734 (1989) (CAVANAGH, J., concurring in part and dissenting in part) (opining that whether the article "a" should be read as referring to one or many is dependent on the context of its usage). We have also repeatedly recognized the significance of using a definite article to indicate the inverse—that a word should be read restrictively. See, e.g., *Massey v Mandell*, 462 Mich 375, 382 n 5; 614 NW2d 70 (2000) (noting that when the Legislature has qualified the same word with the definite article "the" and the indefinite article "a" in the same part of a statute, the Court should not read "the" as if it were "a").

[19] The dissent does not disagree with our conclusion that the meaning of the indefinite article "a" must be determined from its context, but the dissent instead suggests that "a

It is also a fundamental principle of statutory construction that "[w]hen the Legislature uses different words, the words are generally intended to connote different meanings." *US Fidelity & Guaranty Co v Mich Catastrophic Claims Ass'n (On Rehearing)*, 484 Mich 1, 14; 795 NW2d 101 (2009). Applying that principle here, had the Legislature intended the fourth sentence of MCL 324.5506(14) to refer only to operating permits, then it would have used that specific term, or another restrictive term, rather than the general phrase "a permit." Four permit types[20] are mentioned by name in MCL 324.5505(8) and MCL 324.5506(14), which indicates that the Legislature knew how to be specific when it so intended. It is notable that the Legislature refers to the generic "a permit" in the sentence stating the time line for filing for judicial review but specifically refers to operating permits in the immediately preceding sentence; had the Legislature intended the 90-day time line to apply only to operating permits, it could have easily done so, but it did not. Because the statute refers instead to "a permit," this

permit" should be read as recognizing that there may be multiple "permits of the singular species identified in the preceding sentence . . . ." It is true that "a" can refer to a plural or singular antecedent depending on the context of its use, but that does not affect our analysis. The fact that a single facility may have more than one operating permit or that one might seek judicial review of more than one permit simultaneously does not answer the question of whether the sentence describing the timing for judicial review of "a permit" refers to permits other than an operating permit. Rather, when viewing the term in context, "a permit" is more reasonably read as referring to operating permits as well as those other permits for an existing source that are referred over to MCL 324.5506(14) by the last sentence of MCL 324.5505(8).

[20] The named permits are operating permits, permits to install, general permits, and permits to operate authorized under rules promulgated pursuant to MCL 324.5505(6). Currently, no administrative rules exist that govern a permit-to-operate program, but such permits remain legally distinct from operating permits.

language thus refers to any of the four types of permits mentioned in MCL 324.5505(8) and MCL 324.5506(14). This reading is bolstered by other provisions in Part 55 of the NREPA, in which the Legislature used the phrase "a permit" to refer to all permits governed by Part 55[21] and named specific permits when a provision's applicability is limited to a single type of permit.[22]

We also find significant the Legislature's use of restrictive language in other parts of the very statutes being analyzed. As South Dearborn notes, when the Legislature wanted to use "permit" to refer to a particular previously referenced permit, it used more restrictive language. In MCL 324.5506(14), the first sentence lists three types of permits that an owner or operator of an emission source might possess and instructs how "*such a permit*" and "*his or her permit*" may be reviewed when referring back to those specific permits. (Emphasis added.) This signals a limitation to the previously mentioned permits. The final three sentences of MCL 324.5506(14) also distinguish between restrictive and nonrestrictive language. They state:

> *A petition for judicial review* is the exclusive means of obtaining judicial review of a permit and shall be filed within 90 days after the final permit action. *Such a petition* may be filed after that deadline only if it is

---

[21] See, e.g., MCL 324.5515(1) ("If the department believes that a person is violating . . . a permit issued under this part, . . . the department shall make a prompt investigation."); MCL 324.5510 ("In accordance with this part and rules promulgated under this part, the department may, after notice and opportunity for public hearing, deny or revoke a permit issued under this part if any of the following circumstances exist[.]").

[22] See MCL 324.5502(1) ("Except as provided in subsection (2), the department shall not issue a permit to install or an operating permit to a municipal solid waste incinerator unless . . . .").

18

> based solely on grounds arising after the deadline for judicial review and if [it does not involve Title IV's acid rain program]. *Such a petition* shall be filed within 90 days after the new grounds for review arise. [MCL 324.5506(14) (emphasis added).]

The final two sentences in the quoted passage refer back to the subject of the preceding sentence by starting with the words "such a petition." By doing so, these sentences impose additional limitations on the petition for judicial review described in the first sentence. The use of "such a petition" also makes clear that these limitations apply only to a petition for judicial review, as opposed to a petition for administrative review mentioned earlier in the statute. Similarly, although MCL 324.5505(8) uses the phrase "such a permit," MCL 324.5506(14) does *not* use that same phrase to limit the types of permit to which the 90-day time line applies.

On the basis of this analysis, we conclude that the Legislature intended "a permit" in MCL 324.5506(14) to mean "any permit" in order to describe the requirements for judicial review of the issuance or denial of the four types of permits for existing sources that are governed by MCL 324.5505 and MCL 324.5506, one of which is a permit to install. Accordingly, a petition for judicial review of a permit to install for an existing source must be filed within 90 days of the permit being issued. Such a reading harmonizes the meaning of these two statutes.

The dissent argues that MCL 324.5506(14) is silent as to petitions for judicial review of permits to install for existing sources and that this silence indicates that the 90-day period contained in MCL 324.5506(14) does not apply to such petitions. However, as already discussed, MCL 324.5505(8) clearly states that "[a]ppeals of permit actions for *existing* sources are subject to section 5506(14)." (Emphasis added.) This effectively

19

refers judicial review of permit actions for existing sources to MCL 324.5506(14); it would be unnecessary to state again in MCL 324.5506(14) that a right to judicial review exists with regard to permits to install for existing sources. Accordingly, the silence in MCL 324.5506(14) as to the availability of judicial review for permits to install for existing sources is immaterial because this right is recognized in MCL 324.5505(8), which explicitly states that such appeals are "subject to" MCL 324.5506(14).

The Court of Appeals and the dissent suggest that the interpretation we adopt today would render "other avenues for appeal" superfluous because the fourth sentence of MCL 324.5506(14) "would apply to the appeal of any and all permits." *SDEIA*, 316 Mich App at 273. However, this concern is unfounded. First, no internal conflict is created within MCL 324.5506(14). The first sentence addresses a discrete group of persons who might challenge a permit action—"[a] person who owns or operates an existing source"—and also provides them a right to contest various types of permit actions—not merely the issuance or denial of a permit. MCL 324.5506(14). The second sentence of MCL 324.5506(14) states that owners or operators may file a petition for administrative review of the previously listed permit actions pursuant to the contested-case and judicial-review procedures of the Administrative Procedures Act. The first two sentences of MCL 324.5506(14) thus exclusively concern the rights of owners and operators of an existing source to seek *administrative review* of specific permit actions. Administrative review is a legally distinct avenue of potential relief from judicial review. *Mudel v Great Atlantic & Pacific Tea Co*, 462 Mich 691, 698; 614 NW2d 607 (2000) (describing the distinctions between judicial and administrative review). The third sentence of MCL 324.5506(14) states that "[a]ny person may appeal the issuance or

20

denial of an operating permit in accordance with" MCL 600.631. This clearly means that non-owners and non-operators also have a right to judicial review of the issuance or denial of operating permits, even if they possess no right to administrative review. Thus, the first three sentences of MCL 324.5506(14) each have an independent legal purpose that is unaffected by our construction of the fourth sentence.

Second, there is no conflict with the right to appeal the issuance or denial of a permit to install for a new source pursuant to MCL 324.5505(8). As we have explained, the first two sentences of MCL 324.5505(8) govern only the appeal of permit actions for specific permits—and only when the permit is for a new source. The fourth sentence of MCL 324.5506(14) applies to judicial review of permits for an existing source, including issuance or denial of an operating permit, which is not addressed in MCL 324.5505(8).[23]

Third, the Court of Appeals also misconstrued the surplusage canon. That canon applies only when a "competing interpretation gives effect to every clause and word of a statute." *Microsoft Corp v i4i Ltd Partnership*, 564 US 91, 106; 131 S Ct 2238; 180 L Ed 2d 131 (2011) (quotation marks and citation omitted). There is no such competing interpretation offered here. In this case, it is the Court of Appeals' interpretation of MCL 324.5506(14) that would render the last sentence in MCL 324.5505(8) needless surplusage. As we explained, its interpretation would relegate the last sentence of MCL

_____

[23] Even assuming that a conflict existed between the first part of MCL 324.5505(8) and the fourth sentence of MCL 324.5506(14), the more specific language concerning new sources in the former would control over the more general language in the latter. See *People v Calloway*, 500 Mich 180, 185-186; 895 NW2d 165 (2017).

21

324.5505(8) to a mere descriptor without any independent legal meaning. Therefore, the surplusage canon compels us to reject that interpretation. See *Rea*, 500 Mich at 433.

For the aforementioned reasons, MCL 324.5505(8) and MCL 324.5506(14) provide 90 days after the final permit action to file a petition for judicial review. South Dearborn's petition for judicial review was timely filed within the 90-day period.

## IV. CONCLUSION

We hold that, pursuant to MCL 324.5505(8) and MCL 324.5506(14), South Dearborn had 90 days from the date the DEQ issued PTI 182-05C to file a petition for judicial review of that decision in the circuit court. Because South Dearborn's petition for judicial review was timely filed 59 days after the permit was issued, the circuit court properly denied AK Steel's motion to dismiss. Accordingly, we affirm the judgment of the Court of Appeals in part for different reasons, vacate Part III(B) of the Court of Appeals' opinion, and remand this case to the circuit court for further proceedings.

Richard H. Bernstein
Bridget M. McCormack
David F. Viviano
Elizabeth T. Clement

22

# STATE OF MICHIGAN

## SUPREME COURT

SOUTH DEARBORN ENVIRONMENTAL
IMPROVEMENT ASSOCIATION, INC.,
DETROITERS WORKING FOR
ENVIRONMENTAL JUSTICE, ORIGINAL
UNITED CITIZENS OF SOUTHWEST
DETROIT, and SIERRA CLUB,

      Petitioners-Appellees,

v                                  No. 154524

DEPARTMENT OF ENVIRONMENTAL
QUALITY and DAN WYANT,

      Respondents-Appellants,
and

AK STEEL CORPORATION,

      Appellee.

---

SOUTH DEARBORN ENVIRONMENTAL
IMPROVEMENT ASSOCIATION, INC.,
DETROITERS WORKING FOR
ENVIRONMENTAL JUSTICE, ORIGINAL
UNITED CITIZENS OF SOUTHWEST
DETROIT, and SIERRA CLUB,

      Petitioners-Appellees,

v                                  No. 154526

DEPARTMENT OF ENVIRONMENTAL
QUALITY and DAN WYANT,

      Respondents-Appellees,

and

AK STEEL CORPORATION,

       Appellant.

_____

WILDER, J. (*dissenting*).

I respectfully dissent because I would affirm the portion of the Court of Appeals opinion that holds that MCL 324.5506(14) describes only two different appeals and that the term "a permit" does not refer to a third class of appellant who may appeal *any* type of permit. Additionally, I would reverse the Court of Appeals insofar as it held that MCR 7.119 governs and hold that the Administrative Procedures Act (APA), MCL 24.201 *et seq.*, does not apply under these facts.

## I. ANALYSIS

At issue in this case is whether petitioners timely filed their claim in circuit court seeking judicial review of a permitting decision by the Michigan Department of Environmental Quality (MDEQ) regarding a permit to install for an existing source of air pollution. In short, this Court held oral argument on the questions (1) whether MCL 324.5506(14) gave petitioners a 90-day period to bring their claim and (2) if not, whether MCR 7.119 gave petitioners a 60-day period to bring their claim. *South Dearborn Environmental Improvement Ass'n, Inc v Dep't of Environmental Quality*, 500 Mich 966 (2017). If neither provision applies, petitioners' claim is time-barred because it was not brought within the 21 days provided by the catch-all provision of MCL 600.631.

## A. INTERPRETATION OF PART 55

The dispositive issue is whether the MDEQ's issuance of an existing permit to install is governed by Part 55 of the Natural Resources and Environmental Protection Act

2

(NREPA), MCL 324.101 *et seq*. MCL 324.5506(14) must be interpreted harmoniously with MCL 324.5505(8), and both these provisions must be interpreted while keeping in mind their place in the overall licensing scheme, which comprises state and federal laws and regulations. "A court does not construe the meaning of statutory terms in a vacuum. Rather, we interpret the words in their context and with a view to their place in the overall statutory scheme." *Manuel v Gill*, 481 Mich 637, 650; 753 NW2d 48 (2008) (quotation marks and citations omitted). When interpreting words and phrases used in a statute, those " 'words and phrases used . . . must be assigned such meanings as are in harmony with the whole of the statute, construed in the light of history and common sense.' " *Sweatt v Dep't of Corrections*, 468 Mich 172, 179; 661 NW2d 201 (2003) (opinion by MARKMAN, J.), quoting *Arrowhead Dev Co v Livingston Co Rd Comm*, 413 Mich 505, 516; 322 NW2d 702 (1982). Statutory language should be construed reasonably, keeping in mind the purpose of the act. *McCahan v Brennan*, 492 Mich 730, 739; 822 NW2d 747 (2012).

Air pollution regulation is governed by interrelated federal and state legislative schemes that are implemented by executive agencies. Federal air pollution regulation is rooted in the Clean Air Act (CAA), 42 USC 7401 *et seq*., the central goal of which is to ensure clean air by establishing national air quality standards and requiring states to develop state plans to ensure that those standards are met. The Environmental Protection Agency (EPA) is the federal agency responsible for implementing the CAA by setting air quality standards and approving state plans. *Id*. However, the CAA establishes only the minimum air quality levels, and states are free to adopt more stringent environmental

3

standards. 42 USC 7416; *Her Majesty the Queen in right of the Province of Ontario v Detroit*, 874 F2d 332, 336 (CA 6, 1989).

Michigan's air pollution control program is rooted in Part 55 of the NREPA, and is implemented by the MDEQ, the permitting authority responsible for developing and implementing air quality requirements and enforcing compliance with both state and federal air quality requirements. There are two types of air permits in Michigan:[1] a permit to install (PTI) provided under Michigan law pursuant to § 5505 of Part 55 and a renewable operating permit (ROP) required under federal law by Title V of the CAA, which was incorporated into §§ 5506 and 5507 of Part 55.

PTIs are required for any new process or process equipment for a new source of pollution and for modifications to any existing source that might result in a change of emissions. MCL 324.5505. Not all sources of air contaminants require a PTI, and certain insignificant sources are exempt from the PTI requirement altogether. Mich Admin Code, R 336.1201. A PTI is a requirement solely based in Michigan law; there is no federal requirement that a source obtain a PTI. The ROP program, on the other hand,

---

[1] Mich Admin Code, R 336.1201 and R 336.1210. Part 55 also permits the MDEQ to create a nonrenewable permit to operate "for sources, processes, or process equipment that are not subject to the requirement to obtain a renewable operating permit," but the MDEQ does not currently issue any such nonrenewable operating permits. MCL 324.5505(6). In the past, the issuance of a permit to install was followed by the application for and issuance of a permit to operate. The need for a permit to operate for sources has been eliminated. Mich Admin Code, R 336.1116 (g) ("The requirement to obtain a permit to operate was removed from these rules effective July 26, 1995. Permits to operate issued before that date remain in effect and legally enforceable unless they are voided pursuant to R 336.1201(6)."). Additionally, MCL 324.5542(1) permits municipalities to establish their own air quality standards and regulations so long as they are at least as stringent as state regulations and federal standards.

4

is part of a national permitting system administered by the state, which requires permitting for "major" sources of air pollution as described in Title V of the CAA. MCL 324.5506; 42 USC 7661.

PTI terms and conditions may be incorporated into an ROP, but if a source does not need an ROP, then a PTI is the primary permit. Mich Admin Code, R 336.1201(6)(b) and R 336.1214. Additionally, PTIs may incorporate legally enforceable provisions restricting potential emissions, which allows a source to avoid classification as "major"; as a result, a company can "opt out" of the ROP requirement. Mich Admin Code, R 336.1205. Because many facilities have hundreds or thousands of processes or devices, and many of those may be subject to multiple regulatory programs including the PTI and ROP programs, it is not uncommon for an owner to apply for and receive multiple PTIs and/or ROPs for a single facility.[2]

Additionally, these air pollution permitting schemes treat new sources of air pollution differently from existing sources. For example, the CAA requires new stationary sources "to be built with [the] best technology, and allows less stringent standards for existing sources."[3] The rationale is founded in simple economics: "[t]he cost of retrofitting existing . . . factories to emit less pollution is generally higher than the

---

[2] See MDEQ, *Permit to Install Workbook: A Practical Guide to Completing an Air Permit Application* (revised January 2016), pp 3-2, 4-1, 4-7, available at <https://perma.cc/R8K8-73B7>.

[3] EPA, *The Clean Air Act in a Nutshell: How It Works* (March 22, 2013), p 1, available at <https://perma.cc/NZ2S-PWLU>; see also 42 USC 7411 (establishing pollution control standards applicable to new stationary and mobile sources).

marginal cost of building new sources with cleaner characteristics."[4]  Additionally, there are sound public policy reasons for this disparate treatment, namely, "fairness to owners of existing sources in the face of changing social norms, scientific understanding of pollution, and government standards."[5]

Having examined the statutory licensing scheme, two conclusions seem apparent: (1) not all permits are created equally, and (2) not all sources of air pollution are treated equally.  Nothing in the statutory licensing scheme indicates that all permits and all sources of air pollution should share parity when it comes to judicial review of permitting decisions.

Rather, judicial review for Title V ROP permitting decisions is mandated under federal law, which allows any person who participated in the public comment period to sue the local permitting agency (here, the MDEQ) in state court no later than 90 days after the final action on the permit.  See 40 CFR 70.4(b)(3) (2017).  By contrast, federal law does not require the issuance of a PTI and consequently does not mandate judicial review of the issuance of such a permit.  Rather than shortening the period for any person to bring the challenge to ROP permitting decisions mandated under federal law, the

---

[4] Levinson, *Grandfather Regulations, New Source Bias, and State Air Toxics Regulations*, 28 Ecological Econ 299, 300 (1999) (citation omitted); see also HR Rep No 95-294, at 185 (1977), as reprinted in 1977 USCCAN 1077, 1264 (indicating that pollution control equipment was not required of older sources because of the expense of retrofitting existing sources and the perceived economic unfairness resulting from a retrofit requirement).

[5] *Grandfather Regulations*, 28 Ecological Econ at 300.

Legislature chose to maintain the full 90-day ceiling imposed by Title V. MCL 324.5506(14) (stating, in pertinent part, that "[a] petition for judicial review is the exclusive means of obtaining judicial review of a permit and shall be filed within 90 days after the final permit action"). There is no dispute that this 90-day provision includes ROPs. The question is whether it *only* includes ROPs, for which judicial review is mandated by federal law, or whether it also applies to PTIs, which are solely a creation of Michigan law. The majority concludes that "a permit" is expansive enough to include PTIs. However, in light of the statutory scheme, the textual clues point in the opposite direction.

It is undisputed that § 5505(8) applies *only* to new sources and that according to the final sentence of § 5505(8), existing sources are governed by § 5506(14). Subsection (14) recognizes two categories of challenges to permitting decisions. The first category is the "owner or operator" challenges that take place according to the contested case and judicial review procedures of the APA, which are limited to "an operating permit under this section [an ROP], a general permit, or a permit to operate [a nonrenewable operating permit]." MCL 324.5506(14). Accordingly, owners and operators cannot challenge a PTI decision under this provision. The second category of challenges are those brought by "[a]ny person" to challenge the issuance of an operating permit (an ROP); in accordance with Title V, a petition must be filed no more than 90 days after the final

7

action on the permit.[6]  The fourth, fifth, and sixth sentences of § 5506(14) describe the timing and conditions for bringing a petition described in the third sentence.

Nothing in § 5506(14) refers to the authority of "any person" to challenge an existing-source PTI decision under MCL 600.631.  Rather, the fourth sentence of § 5506(14) states that "[a] petition for judicial review is the exclusive means of obtaining judicial review of *a permit* and shall be filed within 90 days after the final permit action." (Emphasis added.)  The term "a permit" either means "any permit listed under § 5505(8)" as the majority holds, or it refers to the "operating permit" mentioned in the immediately preceding sentence.  Reading § 5506(14) as a whole, sentence four's placement immediately after the sentence recognizing judicial review of an operating permit is a highly relevant context for interpreting the statute.  "Statutory interpretation requires courts to consider the *placement* of the critical language in the statutory scheme." *Johnson v Recca*, 492 Mich 169, 177; 821 NW2d 520 (2012).  I believe the more reasonable interpretation of sentence four under § 5506(14) is that "a permit" refers to the

_____

[6] At oral argument, the MDEQ's counsel acknowledged that petitioners have alleged that their members, who live near the steel mill at issue, have suffered particularized injuries as a result of the MDEQ's decision to issue the PTI.  See *Mich Citizens for Water Conservation v Nestlé Waters North America Inc*, 479 Mich 280, 296; 737 NW2d 447 (2007) ("A nonprofit organization has standing to bring suit in the interest of its members if its members would have standing as individual plaintiffs."), overruled on other grounds by *Lansing Sch Ed Ass'n, MEA/NEA v Lansing Bd of Ed*, 487 Mich 349 (2010).  Specifically, the MDEQ agrees that petitioners have alleged that their members have been injured by an increase in air pollutants that resulted from the MDEQ's decision to issue the permit.  Accordingly, because petitioners have made general factual allegations that injury will result from the MDEQ's conduct, and because this case is still in the pleading phase, this allegation is sufficient to demonstrate standing.

8

term "operating permit" used in the *immediately preceding sentence*, rather than to a PTI, a type of permit that is not mentioned *anywhere* in § 5506.

The majority emphasizes the Legislature's use of an indefinite article as textual support for its interpretation. It is true that "a" may *sometimes* substitute for the term "any." See *Allstate Ins Co v Freeman*, 432 Mich 656, 699; 443 NW2d 734 (1989) (opinion by RILEY, C.J.) (finding that "an insured" unambiguously means "any insured"). However, this Court has also recognized that the use of an indefinite article does not *always* require a binary reading in which "a" refers to "any and all" and "the" refers to "one and only one specific antecedent noun." Rather than being purely a measure of particularity, indefinite nouns may indicate singularity and plurality. *Robinson v Lansing*, 486 Mich 1, 26-27; 782 NW2d 171 (2010) (YOUNG, J., concurring) (noting that a definite article may refer to an earlier noun modified by an indefinite article). See also *Michigan v McQueen*, 493 Mich 135, 154-156; 828 NW2d 644 (2013) (concluding that the definite article "the" in "the qualifying patient" used later in the statute at issue must refer back to the antecedent indefinite article "a" in "a qualifying patient" used in the introductory part of that statute). This case presents an instance in which "a permit" does not refer to "any and all permits." Instead, it recognizes that there may be plural permits of the singular species identified in the preceding sentence (operating permit).

The majority reasons that the meaning of "a permit" must lie in § 5505(8) because the cross-reference to § 5506(14) would otherwise be rendered meaningless—or at least would have little meaning—contrary to the canon against surplusage. However, appeals for existing sources are still subject to § 5506(14), and the cross-reference forecloses any argument that an appeal related to a PTI for an existing source might be made under

9

§ 5505(8) because the modifier of "new source" would only apply to the immediately preceding noun "permit to operate" (nonrenewable permit). Moreover, as the majority also notes, that canon applies only when a "competing interpretation gives effect to *every* clause and word of a statute," *Microsoft Corp v i4i Ltd Partnership*, 564 US 91, 106; 131 S Ct 2238; 180 L Ed 2d 131 (2011), and the maxims of interpretation are merely *guides* to discovering the Legislature's bona fide intent, not hard and fast rules. (Citation and quotation marks omitted; emphasis added.) The majority's interpretation renders nugatory both §§ 5505(8) and 5506(14). The Legislature differentiated between new and existing sources and the identity of the challenger. Permitting *any* party to seek judicial review of *any* permit under sentence four of § 5506(14) renders these distinctions meaningless. Thus, it seems more reasonable to read the cross-reference as clarification that § 5505(8) is focused upon new sources, while § 5506(14) is focused upon existing sources.

The Legislature's use of the phrase "subject to" in the final sentence of § 5505(8)—"[a]ppeals of permit actions for existing sources are *subject to* section 5506(14)"—does not alter my conclusion. (Emphasis added.) Two statutory sections that refer to the same issue and are connected by the phrase "subject to" often work together such that both sections govern that particular issue. See *Mayor of Lansing v Pub Serv Comm*, 470 Mich 154, 158-161; 680 NW2d 840 (2004). In this case, however, the "subject to" language applies only to "[a]ppeals of permit actions for *existing sources*," while the first sentence of § 5505(8) only recognizes judicial review of a permit to install for *new sources*. (Emphasis added.) In other words, because nothing in § 5505(8) before the final sentence refers to existing sources, the "subject to" language does not apply

10

beyond that final sentence and nothing in that sentence indicates which *types* of permits for existing sources are "subject to" § 5506(14).

The majority further reasons that the Legislature's failure to use the term "such a permit" in § 5506(14) as it did in § 5505(8) must be given meaning, because surely the Legislature knows how to properly use a definite article. Yet, this reasoning runs both ways. The Legislature surely knows how to include the term "permit to install" when it wants to refer to one's right to challenge a decision on a PTI under MCL 600.631—precisely as indicated in § 5505(8) where the Legislature recognized this right regarding new sources.

Additionally, the fourth sentence of § 5506(14) does not describe what judicial review process is applicable. Presumably, this would be the judicial review process described in the previous sentence (MCL 600.631), but the majority's interpretation would sever the fourth sentence from the third—an approach that violates the interpretive canon that a statutory text must be construed as a whole. *Sweatt*, 468 Mich at 179 (opinion by MARKMAN, J.); see also Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* (St. Paul: Thomson/West, 2012), p 167 ("Perhaps no interpretative fault is more common than the failure to follow the whole-text canon, which calls on the judicial interpreter to consider the entire text, in view of its structure and of the physical and logical relation of its many parts."). Rather than read the sentences of § 5506(14) in isolation from each other and from the rest of the statutory scheme, I conclude that the more reasonable interpretation is that "a permit" refers to "an operating permit."

Moreover, there is no reason to assume that the Legislature inadvertently left out judicial review for existing permits to install under the NREPA. "Generally, when

11

language is included in one section of a statute but omitted from another section, it is presumed that the drafters acted intentionally and purposely in their inclusion or exclusion." *People v Peltola*, 489 Mich 174, 185; 803 NW2d 140 (2011). This Court has recognized that "courts cannot assume that the Legislature inadvertently omitted from one statute the language that it placed in another statute, and then, on the basis of that assumption, apply what is not there." *Id.* (quotation marks, citations, and brackets omitted). Notably, that is *precisely* what the majority does: it takes language from § 5505(8), a provision that recognized a right for any person to challenge a PTI for a new source under MCL 600.631, and reads it into § 5506(14), thereby judicially creating what the Legislature plainly omitted—a 90-day window for any person to challenge a PTI for an existing source. This results in a forced parity on all permits for all sources of air pollution—a parity that is not supported by the statutory licensing scheme, which unquestionably treats different permits and different sources of air pollution *differently*.

Because I conclude that the textual clues of the statute point in another direction, I would affirm the portion of the Court of Appeals opinion that holds that MCL 324.5506(14) describes only two different appeals and that the term "a permit" does not refer to a third class of appellant who may appeal any type of permit.

### B. INTERPRETATION OF MCL 24.201

The majority concludes that the instant petition was timely filed, and accordingly, it does not reach the issue of whether the Court of Appeals properly considered the applicability of the contested-case provision of the APA. However, because I conclude that MCL 324.5505(8) and MCL 324.5506(14) do not extend to give petitioners 90 days

to bring their petition, my analysis continues. I would reverse the portion of the Court of Appeals opinion holding that MCR 7.119 governs, because the APA does not apply under these facts.

MCR 7.119 applies to appeals governed by the APA. MCR 7.119(B)(1) provides, in pertinent part, that "[j]udicial review of a final decision or order shall be by filing a claim of appeal in the circuit court within 60 days after the date of mailing of the notice of the agency's final decision or order." The facts demonstrate that petitioners' challenge came 59 days after the MDEQ decision. Thus, if the APA applies, then petitioners' challenge was timely under MCR 7.119.

In holding that the APA applies, the panel relied on a relevant provision of Chapter 5, MCL 24.291(1), which states, in pertinent part, that "[w]hen licensing is required to be preceded by notice *and an opportunity for hearing*, the provisions of this act governing a contested case apply." (Emphasis added.) Section 91(1) does not express what *type* of "hearing" is required. However, Chapter 1 of the APA defines "contested case," in pertinent part, as

> a proceeding, including . . . licensing, in which a determination of the legal rights, duties, or privileges of a named party is required by law to be made by an agency after an opportunity for an *evidentiary* hearing. [MCL 24.203(3) (emphasis added).]

The panel erroneously concluded without explanation that an "opportunity for hearing" includes a public hearing.[7] As previously stated, each word and phrase in a

---

[7] *South Dearborn Environmental Improvement Ass'n v Dep't of Environmental Quality*, 316 Mich App 265, 277 n 3; 891 NW2d 233 (2016) ("[N]otice was provided of the public comment period, which was held from February 12, 2014, through March 19, 2014, and

13

statute "must be assigned such meanings as are in harmony with the whole of the statute . . . ." *Sweatt*, 468 Mich at 179 (opinion by MARKMAN, J.). Thus, the APA's Chapter 5 requirement for a "hearing" must be read in harmony with its Chapter 1 requirement that the hearing be "evidentiary." Therefore, the correct interpretation of these provisions requires an *evidentiary* hearing prior to a contested case in order for the APA to apply. Because that did not happen in this case, the APA does not apply.

Petitioners argue that the informal proceedings that occurred in this case were sufficient for the APA to apply. Indeed, MCL 24.292 describes instances in which informal proceedings may be used when an agency seeks to suspend, revoke, or amend a license:

> Before beginning proceedings for the suspension, revocation, annulment, withdrawal, recall, cancellation or amendment of a license, an agency shall give notice, personally or by mail, to the licensee of facts or conduct that warrants the intended action. The licensee shall be given an opportunity to show compliance with all lawful requirements for retention of the license . . . . [MCL 24.292(1).]

However, MCL 24.292 anticipates that a contested case could be brought in the eventuality that informal proceedings do not yield a desired outcome. Therefore, the final agency decision as described in MCR 7.119 would not occur absent the contested case being brought, and although MCR 7.119 is applicable to contested cases, it does not apply to the informal proceedings at issue here. Because I conclude that MCR 7.119

---

of the public hearing, which was held on March 19, 2014.").

14

does not apply here, I would reverse the portion of the Court of Appeals decision that holds otherwise.

## C. APPLICATION OF MCL 600.631

Because the APA is not applicable, this Court must look to the Revised Judicature Act (RJA), MCL 600.101 *et seq*., for judicial review. MCL 600.631 provides, in pertinent part:

> An appeal shall lie from any order, decision, or opinion of any state . . . agency, authorized under the laws of this state to promulgate rules from which an appeal or other judicial review has not otherwise been provided for by law, to the circuit court of the county of which the appellant is a resident or to the circuit court of Ingham county, which court shall have and exercise jurisdiction with respect thereto as in nonjury cases. *Such appeals shall be made in accordance with the rules of the supreme court.* [Emphasis added.]

The RJA provides for judicial review when a statute authorizing the agency to act fails to provide for judicial review and the agency decision does not fall within the APA's definition of a "contested case." Because I conclude that the NREPA does not provide judicial review for petitioners' challenge to the PTI, and because I conclude that the APA does not apply in this case, I also conclude that no appellate review has "otherwise been provided for by law."

MCR 7.123 is the catch-all rule for appeals of agency decisions not governed by another rule. The time requirement under MCR 7.123(B)(1) refers to MCR 7.104(A), which provides, in pertinent part, that "[a]n appeal of right to the circuit court must be taken within . . . 21 days . . . ." Petitioners' challenge came 59 days after the MDEQ decision. Thus, petitioners' challenge to the MDEQ issuance of the PTI was not timely.

## II. CONCLUSION

I would affirm the portion of the Court of Appeals opinion that holds that MCL 324.5506(14) describes only two different appeals and that the term "a permit" does not refer to a third class of appellant who may appeal any type of permit. I would reverse the holding that MCR 7.119 governs, because the APA does not apply under these facts. Instead, I would conclude that MCR 7.123 provided 21 days for petitioners to challenge the MDEQ's decision to issue the PTI and that because petitioners' challenge came 59 days after that decision, the challenge was not timely. Accordingly, I respectfully dissent.

Kurtis T. Wilder
Stephen J. Markman
Brian K. Zahra

16