*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

TREVOR LE GASSICK, as Trustee of the JAMES
A. BELLAMY TRUST and as Personal
Representative of the ESTATE OF JAMES A.
BELLAMY,

        Plaintiff-Appellant,

v

UNIVERSITY OF MICHIGAN REGENTS and
ANDREW D. MARTIN,

        Defendants-Appellees.

FOR PUBLICATION
November 19, 2019
9:20 a.m.

No. 344971
Washtenaw Circuit Court
LC No. 18-000395-CZ

Before: BORRELLO, P.J., and K. F. KELLY and SERVITTO, JJ.

PER CURIAM.

Plaintiff, Trevor Le Gassick as Trustee of the James A. Bellamy Trust and as Personal Representative of the Estate of James A. Bellamy, appeals as of right the trial court's order granting summary disposition to defendants, University of Michigan Regents and Andrew D. Martin, by holding that plaintiff did not have standing to challenge defendants' compliance with the terms of the trust distribution to the University. For the reasons stated below, we reverse.

## I. BASIC FACTS[1]

Professor James A. Bellamy, a recognized expert in classical Arabic literature, joined the Department of Near Eastern Studies at the University of Michigan (University) as an instructor in 1959 and became a full professor in 1968. Professor Bellamy held the title of Professor of Arabic Papyrology until his retirement in 1995. Classical Arabic literature "refers to writing in

---

[1] We summarize the allegations in the complaint to provide a context for the purpose of the trust and the disposition of the issues and do not render factual findings regarding the validity of the allegations.

Arabic from the early Christian era to some hundreds of years thereafter," and "captures ancient Arabic inscriptions, papyri, manuscripts, and textual issues relating to the Qur'an and pre-Islamic poetry." Plaintiff joined the Department of Near Eastern Studies at the University in 1966, specializing in Arabic studies.

On August 6, 1998, after his retirement, Professor Bellamy executed an estate plan establishing the Bellamy Trust and a pour-over will which he subsequently amended on several occasions. On August 5, 2011, by operation of the Second Amendment, plaintiff began serving as cotrustee along with Professor Bellamy. On September 23, 2011, Professor Bellamy executed a Third Amendment, directing the trustee to distribute to the University the amount necessary "to endow a full professorship, named after the Grantor, in the field of medieval classical Arabic literature" as further set forth in any then-existing gift agreement between the University and the Grantor. Professor Bellamy also directed the distribution of at least $300,000 directly to plaintiff, with any remaining sums split between "provid[ing] fellowship support for the graduate students studying with the holder of the James A. Bellamy professorship," as further set forth in any then-existing gift agreement, and the American Oriental Society.

According to the complaint, Professor Bellamy allegedly "had a desire to gift a substantial portion of his money at his death to the University if used by the University to continue his work" and "regularly talked to Plaintiff as his friend and colleague regarding his gifting intentions." In 2011, with the aid of counsel, Professor Bellamy entered into negotiations with the University and, on October 13, 2011, agreed to execute a gifting agreement (Gift Agreement). The Gift Agreement provided material terms that the funds were to be used for a "medieval classical Arabic literature" professorship and, if there was no one qualified in the University, that the University was required to hire an outside applicant. The Gift Agreement provided that the Dean of the College of Literature, Science, and the Arts (currently defendant Andrew D. Martin) "shall be responsible for carrying out the intended purpose of the Fund and excess amount," and the University was required to loyally honor Professor Bellamy's wishes.

Professor Samer Mahdy Ali joined the Department of Near Eastern Studies in 2014. Plaintiff alleged that Professor Ali specialized in late medieval Arabic literature, a period "starkly different" from the classical specialty taught by Professor Bellamy. In 2015, Professor Ali was appointed associate, not full professor. Further, he purportedly acknowledged that he was not an expert in classical Arabic literature and "that his main interest has been and will continue to be in late medieval Arabic literature (the post- mid-` Abbasid period)."

Professor Bellamy died on July 21, 2015, at the age of 89. In addition to being Professor Bellamy's colleague, friend, and cotrustee, plaintiff also served as personal representative of Professor Bellamy's estate. In February 2016, plaintiff, as trustee, distributed, and the University accepted $2,500,000 from the Bellamy Trust pursuant to the Gift Agreement, as evidenced by a receipt. The receipt acknowledged that the funds were to endow a "full" professorship in the "field of medieval classical Arabic literature." On July 7, 2016, the University acknowledged receipt of an additional distribution of $1,000,000 for funding the graduate student fellowship support for the holder of the professorship.

On December 11, 2017, the University announced the appointment of Professor Ali to Professor Bellamy's position. Plaintiff maintained that Professor Ali was "not qualified to teach

classical Arabic literature at the University" and, in any event, was not a full professor. Plaintiff contended that the University was required to conduct a search for a properly qualified professor to fill the position, which it failed to do. When the University initially posted the Bellamy position, it did not adhere to the gift contract requirements for a "full" professorship in "medieval classical Arabic literature", but rather merely sought an associate professor in "Pre-Modern Arabic Culture." Consequently, plaintiff allegedly objected to the accuracy of the posting in light of the requirements of the Gift Agreement. Thereafter, the University withdrew the posting and instead announced the appointment of Professor Ali.

On April 23, 2018, plaintiff filed suit, alleging (1) breach of contract, namely the University's failure to use the funds consistent with the terms of the Gift Agreement, and seeking damages or specific performance; (2) breach of fiduciary duty, on account of the University's failure, as trustee of the charitable trust established by Professor Bellamy's gift, to comply with the terms and conditions of the resulting charitable trust; (3) violation of the Uniform Prudent Management of Institutional Funds Act, MCL 451.921 *et seq.*; and (4) the need for injunctive relief prohibiting the dissipation of funds during the pendency of the case. In support of the claims, plaintiff alleged that the University hired Professor Ali in 2015. However, after Professor Bellamy's death, the University did not appoint him to the Bellamy professorship. Additionally, in 2016 when the University received the trust funds for the charitable trust, Professor Ali was not appointed to the position. Plaintiff asserted that, on the day Professor Ali's appointment was announced, "the Department Chair said in Plaintiff's presence and the presence of others in the Department that the motive behind Professor Ali's appointment was to alleviate Department budget issues by having the [Bellamy] Trust rather than the Department budget pay Professor Ali's salary." The complaint proffered that the University did not loyally honor Professor Bellamy's wishes as set forth in the Gift Agreement and provided statements by several other Arabist professors at the University agreeing that Professor Ali was not qualified for the position. Instead, it was alleged that the University sought to move away from teaching classical Arabic literature, and place Professor Bellamy's trust funds in a general fund to support areas of teaching and research other than those specifically directed by Professor Bellamy in the Gifting Agreement and contrary to the intent of the bequest.

On June 12, 2018, defendants moved for summary disposition, arguing that plaintiff lacked standing. Defendants maintained that the distribution of the $3,500,000 created a separate charitable trust over which plaintiff was not the trustee. They also submitted that MCL 700.7405(3) applied, limiting enforcement of the resulting charitable trust to the Attorney General and the University. In response, plaintiff argued that, although he was not the trustee of the resulting charitable trust, the "among others" language in MCL 700.7405(3) did, in fact, confer him standing as a person possessing a special interest in its enforcement. Additionally, MCL700.7405(3) did not apply to the extent (1) that plaintiff sought the probate court's involvement concerning the possible nondistribution of unallocated Bellamy Trust funds, and (2) that, as personal representative, plaintiff could nevertheless file suit on behalf of the estate seeking damages for the breach of the Gift Agreement.

After oral argument, the probate court held that, under MCL 700.7405(3), the right of a settlor to enforce the terms of a charitable trust is personal to the settlor and cannot be exercised by the settlor's fiduciary. Without any analysis, the probate court concluded that plaintiff did not have any special interest in enforcing the terms of the charitable trust. The probate court did not

address plaintiff's argument that, as personal representative, he could independently bring suit for breach of the Gift Agreement on behalf of Professor Bellamy's estate. It also did not address the potential nondistribution of any residual Bellamy Trust funds. Plaintiff now appeals.

## II. APPLICABLE LAW

"A decision on a motion for summary disposition and the interpretation of a statute are reviewed de novo."[2] *ADR Consultants, LLC v Mich Land Bank Fast Track Auth*, 327 Mich App 66, 74; 932 NW2d 226 (2019). Issues involving statutory interpretation present questions of law that are reviewed de novo. *Meisner Law Group, PC v Weston Downs Condo Ass'n*, 321 Mich App 702, 714; 909 NW2d 890 (2017). "The primary goal of statutory interpretation is to give effect to the intent of the Legislature." *Briggs Tax Serv, LLC v Detroit Pub Sch*, 485 Mich 69, 76; 780 NW2d 753 (2010). The most reliable evidence of legislative intent is the plain language of the statute. *South Dearborn Environmental Improvement Ass'n, Inc v Dep't of Environmental Quality*, 502 Mich 349, 360-361; 917 NW2d 603 (2018). If the language of the statute is clear and unambiguous, it is presumed that the Legislature intended the meaning plainly expressed in the statute. *Gardner v Dep't of Treasury*, 498 Mich 1, 6; 869 NW2d 199 (2015). The court's interpretation of a statute must give effect to every word, phrase, and clause. *South Dearborn*, 502 Mich at 361. Further, an interpretation that would render any part of the statute surplusage or nugatory must be avoided. *Id*. Common words and phrases are given their plain meaning as determined by the context in which the words are used, and a dictionary may be consulted to ascertain the meaning of an undefined word or phrase. *Id*. "In construing a legislative enactment we are not at liberty to choose a construction that implements any rational purpose but, rather, must choose the construction which implements the legislative purpose perceived from the language and the context in which it is used." *Frost-Pack Distrib Co v City of Grand Rapids*, 399 Mich 664, 683; 252 NW2d 747 (1977).

---

[2] Defendants moved for summary disposition pursuant to MCR 2.116(C)(5) and alleged that plaintiff did not have standing to pursue the litigation. Summary disposition is appropriate pursuant to MCR 2.116(C)(5) when the "party asserting the claim lacks the legal capacity to sue." However, the doctrine of standing is distinct from the capacity to sue although the concepts are frequently conflated by parties. See *Flint Cold Storage v Dep't of Treasury*, 285 Mich App 483, 502; 776 NW2d 387 (2009). Even if the trial court grants summary disposition pursuant to the wrong subrule, we may review the issue in light of the correct subrule. *Computer Network, Inc v AM Gen Corp*, 265 Mich App 309, 313; 696 NW2d 49 (2005). A motion for summary disposition premised on the doctrine of standing as a defense may be proper pursuant to MCR 2.116(C)(8) or MCR 2.116(C)(10) contingent upon the pleadings or other circumstances of the particular case. *Pontiac Police & Fire Retiree Prefunded Group Health & Ins Trust Bd of Trustees v City of Pontiac No. 2*, 309 Mich App 611, 620-621; 873 NW2d 783 (2015). Because the parties presented documentary evidence outside the pleadings, including the trust and Gift Agreement documents, and the propriety of the distribution in accordance with the settlor's wishes is the subject of the litigation, we treat the motion as having been granted pursuant to MCR 2.116(C)(10). See *Mino v Clio Sch Dist*, 255 Mich App 60, 63 n 2; 661 NW2d 586 (2003).

The proper construction of a trust also presents a question of law subject to de novo review. *Hegadorn v Dep't of Human Servs Dir*, 503 Mich 231, 245; 931 NW2d 571 (2019). When interpreting trust language, the court's goal is to determine and give effect to the trustor's intent. *Id*. Interpretation begins with an examination of the trust language, and if there is no ambiguity, the trust terms are interpreted according to the plain and ordinary meaning. *Id*.

## III. TRUST LAW AND STANDING

The Michigan Trust Code (MTC), MCL 700.7101 *et seq*.,[3] shall be construed and applied to promote its underlying purposes and policies. MCL 700.8201(1).

> (2) The following are the underlying purposes and policies of [the MTC]:
>
> (a) To make more comprehensive and to clarify the law governing trusts in this state.
>
> (b) To permit the continued expansion and development of trust practices through custom, usage, and agreement of the parties.
>
> (c) To foster certainty in the law so that settlors of trusts will have confidence that their instructions will be carried out as expressed in the terms of the trust. [MCL 700.8201(2).]

"It is a general principle of trust law that a trust is created only if the settlor manifests an intention to create a trust, and it is essential that there be an explicit declaration of trust accompanied by a transfer of property to one for the benefit of another." *Osius v Dingell*, 375 Mich 605, 613; 134 NW2d 657 (1965).[4] The settlor must have the capacity to create a trust and must indicate an intention to create the trust. MCL 700.7402(1)(a), (b). The trust must have a definite beneficiary or is a charitable trust or a trust for a noncharitable purpose. MCL 700.7402(1)(c). The trustee "shall administer the trust in good faith, expeditiously, in accordance with its terms and purposes, for the benefit of the trust beneficiaries[.]" MCL 700.7801; see also *In Re Pollack Trust*, 309 Mich App 125, 156; 867 NW2d 884 (2015). The trustee has the following general powers:

> (1) A trustee, without authorization by the court, may exercise all of the following:
>
> (a) Powers conferred by the terms of the trust.

---

[3] The Estates and Protected Individuals Code (EPIC) became effective April 1, 2000. MCL 700.8101. The Michigan Trust Code became effective April 1, 2010, and is also referred to as Article VII of EPIC. MCL 700.8204; see also *Independent Bank v Hammell Assocs, LLC*, 301 Mich App 502, 509; 836 NW2d 737 (2013).

[4] The property or an interest in the property need not be transferred concurrently with the signing of the instrument to be valid. MCL 700.7401(2).

(b) Except as limited by the terms of the trust, all of the following:

(*i*) All powers over the trust property that an unmarried competent owner has over individually owned property.

(*ii*) Any other powers appropriate to achieve the proper investment, management, and distribution of the trust property.

(*iii*) Any other powers conferred by this article.

(2) The exercise of a power is subject to the fiduciary duties prescribed by this article. [MCL 700.7816.]

In addition to the general power delineated above, the trustee also has specific powers as set forth in MCL 700.7817, which provides, in relevant part:

Without limiting the authority conferred by [MCL 700.7816], a trustee has all of the following powers:

* * *

(e) To satisfy a settlor's written charitable pledge irrespective of whether the pledge constitutes a binding obligation of the settlor or was properly presented as a claim, if in the trustee's judgment the settlor would have wanted the pledge completed under the circumstances.

* * *

(x) To prosecute, defend, arbitrate, settle, release, compromise, or agree to indemnify an action, claim or proceeding in any jurisdiction or under an alternative dispute resolution procedure. The trustee may act under this subdivision for the trustee's protection in the performance of the trustee's duties.

In light of the above statutory provisions, we conclude that plaintiff had standing to challenge the charitable distribution to the University when defendants purportedly failed to satisfy the purpose and terms of the Bellamy Trust and the Gift Agreement. Professor Bellamy attained international recognition in the field of medieval classical Arabic literature. Specifically, he was called upon to decipher and translate "the Paris Louvre Namara inscription of 328 A.D." as well as interpret and explain passages in the Qur'an, particularly addressing mysterious letters that preceded some of the chapters. Consequently, Professor Bellamy sought to ensure that his work would continue and deemed his particular field of Arabic studies necessary to a world-class university program. In conjunction with that belief, he created a trust and pour-over will to effectuate the continuation of his work. Indeed, his charitable contribution expressed his wishes as reflected in the Gift Agreement to fund a full professorship in his field as well as student fellowship. The MTC was created to foster certainty "that settlors of trusts will have confidence that their instructions will be carried out as expressed in the terms of the trust." MCL 700.8201(2)(c). Further, plaintiff, as the trustee, had to administer the trust in good faith, in accordance with its terms and purposes, MCL 700.7801, had to satisfy charitable pledges "if in

the trustee's judgment the settlor would have wanted the pledge completed under the circumstances," MCL 700.7817(e), and had the obligation to prosecute a claim in the performance of the trustee's duties, MCL 700.7817(x).

Furthermore, we note that general principles of standing are applicable to trusts. In *In re Pollack Trust*, 309 Mich App at 155,[5] this Court adopted the following standing principles:

> We hold that Michigan standing jurisprudence should be restored to a limited, prudential doctrine that is consistent with Michigan's longstanding historical approach to standing. Under this approach, a litigant has standing whenever there is a legal cause of action. Further, whenever a litigant meets the requirements of MCR 2.605, it is sufficient to establish standing to seek a declaratory judgment. Where a cause of action is not provided at law, then a court should, in its discretion, determine whether a litigant has standing. A litigant may have standing in this context if the litigant has a special injury or right, or substantial interest, that will be detrimentally affected in a manner different from the citizenry at large or if the statutory scheme implies that the Legislature intended to confer standing on the litigant.

In the present case, plaintiff as the trustee and personal representative of the Bellamy Trust and Estate had obligations to address in good faith, and upon learning the distribution terms of the Gift Agreement did not execute Professor Bellamy's intent, he had the right and obligation to file suit, MCL 700.7817(x), to ensure that the settlor's instructions pertaining to the trust were followed, MCL 700.8201(2). Thus, the trustee learned of an injury and the trust distribution "detrimentally affected" the trust and its beneficiaries in a manner different from the citizenry at large. *In re Pollack Trust*, 309 Mich App at 155. In addition to statutory trust law, the trial court improperly granted summary disposition in favor of defendants in light of general standing principles.

## IV. CHARITABLE TRUSTS AND STANDING

Defendants nonetheless assert that once the distribution occurred, a charitable trust was established with the University serving as the trustee, and therefore, plaintiff lacked standing to enforce the charitable trust pursuant to MCL 700.7405. Indeed, MCL 700.7405 governs charitable trusts and enforcement and provides:

---

[5] The *Pollack* Court adopted the standing principles delineated in *Lansing Sch Ed Ass'n v Lansing Bd of Ed*, 487 Mich 349, 372; 792 NW2d 686 (2010). The *Pollack* Court also noted that although the parties did not contest the standing to oppose the petition to modify the trust, it addressed the issue of standing for purposes of completeness. The Court stated that "trustees have a special right or substantial interest that will be detrimentally affected in a manner different from the citizenry at large. *In re Pollack Trust*, 309 Mich App at 155. Although this portion of the court's opinion is arguably obiter dicta, we adopt this reasoning as our own. See *Andreson v Progressive Marathon Ins Co*, 322 Mich App 76, 86 n 7; 910 NW2d 691 (2017).

(1) A charitable trust may be created for the relief of poverty, the advancement of education or religion, the promotion of health, scientific, literary, benevolent, governmental, or municipal purposes, any purpose described in section 501(c)(3) of the internal revenue code, 26 USC 501, or other purposes the achievement of which is beneficial to the community.

(2) If the terms of a charitable trust do not identify a particular charitable purpose or beneficiary, the court may select 1 or more charitable purposes or beneficiaries. The selection shall be consistent with the settlor's intention to the extent it can be ascertained.

(3) The settlor, a named beneficiary, or the attorney general of this state, among others, may maintain a proceeding to enforce a charitable trust. The right of the settlor of a charitable trust to enforce the trust is personal to the settlor and may not be exercised by any of the following:

(a) The settlor's heirs, assigns, or beneficiaries.

(b) The settlor's fiduciary, other than the trustee of the charitable trust the enforcement of which is being sought.

(c) An agent of the settlor acting pursuant to a durable power of attorney, unless the right to enforce the trust is expressly conferred on the agent by the power of attorney.

Pursuant to MCL 700.7405(3), "[t]he settlor, a named beneficiary, or the attorney general of this state, among others, may maintain a proceeding to enforce a charitable trust." Defendants contend that plaintiff is not the trustee or the settlor of the charitable trust, as he concedes, and therefore, he does not fall within the narrow category of "others" thereby precluding this suit. On the latter point, we disagree.

MCL 700.7405 has not been construed by this Court, although it was first enacted by the Legislature in 2010, and is based on the Uniform Trust Code § 405. See Martin & Harder, Estates and Protected Individuals Code with Reporter's Commentary (ICLE, February 2019 update), p 552. Accordingly, we consider whether plaintiff may be considered within the category of "among others" to maintain a proceeding to enforce a charitable trust.

As noted, in giving effect to every word, phrase, and clause in a statute, and avoiding interpretations rendering any part of the statute surplusage or nugatory, this Court gives undefined statutory terms their plain and ordinary meanings. *South Dearborn*, 485 Mich at 361. Merriam-Webster Collegiate Dictionary defines "other" as "a different or additional one." *Merriam-Webster's Collegiate Dictionary* (11th ed). It defines "among" as "in the number or class of." *Merriam-Webster's Collegiate Dictionary* (11th ed). From these definitions, it is evident that the phrase "among others" refers to persons other than the Attorney General, the settlor, or the beneficiaries of the charitable trust, as the statutory text names those persons explicitly. Therefore, defendants' attempt to limit charitable trust enforcement to those persons is without merit. However, although the plain text of the statute unequivocally recognizes that

additional persons may validly seek to enforce a charitable trust, it provides no further guidance addressing who those additional persons might be.

To determine individuals that qualify as "among others," we interpret a statute in accordance with its plain language to give effect to the intent of the Legislature. *South Dearborn*, 502 Mich at 360-361; *Briggs Tax Serv, LLC*, 485 Mich at 76. We may not choose any rational construction, but "must choose the construction which implements the legislative purpose perceived from the language and the context in which it is used." *Frost-Pack Distrib Co*, 399 Mich at 683. Prudently, in this instance, the Legislature clearly expressed that the purpose of the MTC was to "foster certainty in the law so that settlors of trusts will have confidence that their instructions will be carried out as expressed in the terms of the trust." We acknowledge that plaintiff is not the settlor or trustee of the charitable trust despite its creation through the Bellamy Trust and Gift Agreement. Nonetheless, the "among others" language of MCL 700.7405(3), interpreted in accordance with the purpose of the MTC, the powers of the trustee, and the trustee's obligation to facilitate the intentions of the original settlor, Professor Bellamy, grant plaintiff the authority to maintain a proceeding to enforce the charitable trust to ensure that the distribution occurs in accordance with his wishes.

Although we render this holding by examination of the plain language of the statute, its purpose, and the powers and authority of the trustee, we note that our conclusion is further buttressed by the Reporter's Commentary to the Uniform Probate Code. See *In re Lundy Estate*, 291 Mich App 347, 355; 804 NW2d 773 (2011). The Reporter's Commentary explains that:

> [t]he inclusion of the phrase "among others" in subsection (3) is intended to recognize the rights of persons with a special interest in the trust to enforce the trust. Notwithstanding the seeming breadth of this provision, it is not an invitation to any member of the public or anyone conceivably affected by the trust to bring suit. [Martin & Harder, p 553.]

Rather, "more than a mere allegation of the possession of a special interest is required before standing to enforce a charitable trust will be found by the courts," and the courts must "evaluate each circumstance and determine whether the party alleging possession of a special interest in fact has a sufficient special interest to pursue the case." *Id*. The Reporter's Commentary sets forth possible factors relevant to establishing a special interest:

> In general, the plaintiffs must be identifiable beneficiaries or potential beneficiaries in the organization. The plaintiffs must have a specific interest that will be directly affected by the charity's failure to carry out its purpose or by a breach of fiduciary duties. The plaintiff must be a member of an identifiable class of beneficiaries of the charity and not merely a member of the general public who is concerned that the charity be run properly. Courts have been willing to let such beneficiaries sue the charity to protect the "special interest" in a manner analogous to a suit by a beneficiary of a private trust, but the remedy sought must be a benefit to the charity itself and not money damages for the plaintiffs. [*Id*. (quotation marks and citation omitted).]

The Reporter's Commentary lists factors that may be most likely to cause a court to grant standing to private persons as follows:

> (a) the extraordinary nature of the acts complained of and the remedy sought by the plaintiff; (b) the presence of fraud or misconduct on the part of the charity or its directors; (c) the state attorney general's availability or effectiveness; and (d) the nature of the benefitted class and its relationship to the charity. [*Id.* at 554 (quotation marks and citation omitted).]

The Reporter's Commentary provides guidance regarding the factors that allow an individual to qualify as "among others" to challenge a charitable trust. Applying those factors to the present case, we also conclude that plaintiff has standing because he is "among others" entitled to challenge the charitable trust. Plaintiff alleged that Professor Bellamy sought to continue his work through the creation of the Bellamy Trust and Gift Agreement by funding a full professorship in his area of expertise. Although $3,500,000 was transferred to the University to fulfill Professor Bellamy's wishes, plaintiff alleged that defendants did not comply with the terms, but appointed an associate professor of a different specialty. Thus, plaintiff, as trustee and personal representative, distributed funds in accordance with his obligations, but nonetheless had to ensure that the distribution meet the terms of the Gift Agreement. In light of the extraordinary amount of the transfer, the allegation that the settlor of the charitable trust made little to no effort to ensure compliance with Professor Bellamy's wishes, and the Arabic studies field that was deprived of the benefit, an action may be maintained against the charitable trust by plaintiff. Indeed, a settlor would have little incentive to create and distribute to a charitable trust with specific instructions where no enforcement mechanism was available to protect the settlor's intent.

In summary, we conclude that the purpose of the MTC, the trustee's power to prosecute and enforce the trust, and the general rules of standing allow plaintiff to proceed with this litigation. Further, the involvement of a charitable trust and the limitations on enforcement found in MCL 700.7405(3) cannot preclude this litigation particularly where plaintiff has a specific interest and falls within the category of "among others" that may challenge the trust.[6] Accordingly, the trial court improperly concluded that plaintiff lacked standing; summary disposition was improperly granted to defendants.

Reversed and remanded. We do not retain jurisdiction. Plaintiff, the prevailing party, may tax costs.

/s/ Stephen L. Borrello
/s/ Kirsten Frank Kelly
/s/ Deborah A. Servitto

---

[6] In light of our holding, we do not address plaintiff's contention that he has standing pursuant to contractual rights.